# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MUSLIM ADVOCATES<br>P.O. Box 66408<br>Washington, D.C. 20035<br><br>and<br><br>CENTER FOR CONSITUTIONAL RIGHTS<br>666 Broadway, 7th Floor<br>New York, NY 10012<br><br>      *Plaintiffs*,<br>   v.<br><br>UNITED STATES DEPARTMENT OF STATE<br>2201 C Street NW<br>Washington, D.C. 20530<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY<br>3801 Nebraska Avenue NW<br>Washington, D.C. 20016<br><br>UNITED STATES CUSTOMS AND BORDER<br>PROTECTION<br>1300 Pennsylvania Avenue NW<br>Washington, D.C. 20004<br><br>and<br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES<br>20 Massachusetts Ave NW<br>Washington, D.C. 20529<br><br>      *Defendants*. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Muslim Advocates and the Center for Constitutional Rights ("CCR") (collectively, "Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* for declaratory, injunctive, and other appropriate relief to compel the disclosure and release of documents from Defendants U.S. Department of State, U.S. Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Customs and Border Protection ("CBP") and U.S. Citizenship and Immigration Services ("USCIS") (collectively, "Defendants").

**NATURE OF THIS ACTION**

1. Plaintiffs Muslim Advocates and the Center for Constitutional Rights are not-for-profit legal advocacy and educational organizations. On January 23, 2018, Plaintiffs submitted a FOIA Request (the "Request") for materials related to the waiver provisions set forth in President Donald Trump's September 24, 2017 Proclamation 9645, titled "Presidential Proclamation Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats" (hereinafter "the Proclamation"). *See* Ex. A., Muslim Advocates and CCR FOIA Request (Jan. 23, 2018). Closely following the two earlier enjoined executive orders it replaced, the Proclamation forbids nationals of eight countries from entering the United States: Chad[1], Iran, Libya, North Korea, Syria, Venezuela[2], and Yemen. As with the earlier two iterations, the vast majority of the individuals and countries impacted by the Proclamation are Muslim. Under the Proclamation's terms, individuals who are

---

[1] On April 10, 2018, the U.S. Department of State issued revisions to the Proclamation, removing the visa restrictions imposed on Chadian nationals. Chad was not among the countries banned in the First or Second Executive Orders.

[2] Unlike the other listed nations, for Venezuela, the Proclamation only bars the entry on non-immigrant business and/or tourist visas of certain Venezuelan government officials who are "involved in screening and vetting procedures" and their immediate family members.

otherwise banned can only enter the United States by being granted a waiver on a case-by-case basis. Although the Proclamation covers more than 135 million foreign nationals and their U.S. citizen family members, information about the standards governing this waiver process have not been made available to the public in any meaningful way.

2.  The documents and information Plaintiffs seek are of utmost concern to the public, and Plaintiffs' Request sets out the compelling, urgent need for clarity regarding the waiver process. Although the Proclamation lists some examples of situations in which a waiver grant would be appropriate, it provides neither detailed guidance nor information for impacted individuals about requesting consideration or demonstrating their eligibility for a waiver.

3.  In its public filings, the government has described the waiver process as "robust,"[3] "comprehensive"[4] and "individualized."[5] It has also characterized the process as entirely within the consular officer's discretion.[6] However, publicly available evidence[7], as well as information Plaintiff organizations have obtained from directly affected individuals, suggest that the process is cursory, nonexistent, not left to consular discretion, or so limiting that it can be considered nonexistent. In any event, it is not public. A recently published report further documents the

---

[3] Defendants' Opposition to Plaintiff's Renewed Application for Temporary Restraining Order & Preliminary Injunction at 2, *Doe v. Trump*, No. 17-CV-112-WMC (W.D. Wis. Mar. 10, 2017), 2017 WL 975996 at *12, *available at* http://assets.documentcloud.org/documents/3519757/Show-Temp.pdf.

[4] Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and/or Temporary Restraining Order at 1, 10, 25, *Int'l Refugee Assistance Project v. Trump*, 241 F. Supp. 3d 539 (2017) (No. 8:17-cv-00361-TDC), 2017 WL 1047713 at *4, *13, *28.

[5] Application for Stay Pending Appeal to the U.S. Court of Appeals for the Ninth Circuit at 25 n.8, *Trump v. Hawaii*, 137 S. Ct. 2080 (2017) (No. 16-1540).

[6] Transcript of Oral Argument at 76, *Trump v. Hawaii*, No. 17-965 (U.S. *argued* Apr. 25, 2018), http://www.supremecourt.gov/oral_arguments/argument_transcripts/2017/17-965_3314.pdf

[7] *See, e.g.,* Jeremy Stahl, "*The Waivers Process Is Fraud*", SLATE (Jun. 15, 2018), http://slate.com/news-and-politics/2018/06/trump-travel-ban-waiver-process-is-a-sham-two-consular-officers-say.html; Jeremy Stahl, "*Correct the Record, Noel Francisco*", SLATE (Jun. 15, 2018), https://slate.com/news-and-politics/2018/06/trump-v-hawaii-supreme-court-travel-ban-case-solicitor-general-noel-francisco-needs-to-correct-the-record.html.

opacity of the process, the conflicting reports, the absence of guidelines, and the resulting challenges faced by those seeking to avail themselves of the waiver process.[8]

4. Two Supreme Court justices have noted that the transparency and effectiveness of the waiver scheme would be crucial in assessing the Proclamation's lawfulness. *Trump v. Hawaii*, 585 U.S. ____, ____ (2018) (Breyer, J. dissenting). Furthermore, the lack of transparency and conflicting reports have led public officials to seek information about how waivers are assessed, granted or denied, and whether the waiver process is merely "window dressing."[9]

5. Since the Proclamation, Plaintiffs have received a multitude of requests for advice on the waiver process from banned individuals and their families. Plaintiffs have also received numerous reports from affected individuals that describe inconsistent visa processing by U.S. consulates located in Djibouti, Armenia, and Turkey.

6. Given the dearth of official guidance on the waiver process and the conflicting public reports, the documents and information that Defendants are illegally withholding will inform Plaintiffs' ability to thoroughly counsel and aid banned individuals. The information is also key to understanding the scope of the Proclamation's waiver provision and whether it is being implemented in a discriminatory, unconstitutional, or otherwise unlawful manner.

7. As of this filing, Defendants have failed to comply with their obligations under FOIA: Defendants have not issued a final determination in response to Plaintiffs' Request, and

---

[8] Center for Constitutional Rights and the Rule of Law Clinic at Yale Law School, Window Dressing the Muslim Ban: Reports of Waivers and Mass Denials from Yemeni-American Families Stuck in Limbo (2018).

[9] Transcript of Oral Argument, *supra* note 6 at 72, 76-77; Letter from Mary K. Waters, Assistant Sec'y for Legislative Affairs, Dep't of State to Sen. Chris Van Hollen (Feb. 22, 2018), http://fingfx.thomsonreuters.com/gfx/reuterscom/1/60/60/letter.pdf.

have yet to produce any documents. Defendants had previously failed to respond to Plaintiff Muslim Advocates' June 27, 2017 FOIA request seeking similar information about the waivers provision in Executive Order 13,780 (the "Second Executive Order"); that request is the subject of ongoing litigation in this court. *See Muslim Advocates v. Dep't of State,* 1:17-CV-02080-TSC (D.D.C. Feb. 20, 2018).

8. Plaintiffs bring this action to compel Defendants to immediately process and release to Plaintiffs all responsive records that they have unlawfully withheld.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346. This Court also has subject matter jurisdiction over this action and personal jurisdiction over all parties pursuant to 5 U.S.C. § 552(a)(4)(B).

10. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), because a substantial portion of the events giving rise to this action occurred in this District, and because Defendants maintain records and information subject to the Request in this District.

## PARTIES

11. Plaintiff Muslim Advocates is a non-profit corporation with offices in Washington, D.C. and California that works to ensure civil rights for Americans of all faiths through national legal advocacy, litigation, policy engagement, and civic education. Muslim Advocates also regularly disseminates information to the public through its website, social media platforms, and email distribution lists. Muslim Advocates submitted the Request that is the subject of this action and is a "person" within the meaning of 5 U.S.C. § 551(2).

12. Plaintiff CCR is a non-profit, legal and public education organization located in New York City that engages in litigation, public advocacy, and the production of publications in the fields of civil rights, and domestic and international human rights. CCR also regularly disseminates information through CCR's website as well as social media platforms. CCR submitted the Request that is the subject of this action and is a "person" within the meaning of 5 U.S.C. § 551(2).

13. Defendant Department of State is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). Department of State is the executive department responsible for international relations and is an agency of the United States. Department of State has possession of and control over the documents and information requested by Plaintiffs under FOIA.

14. Defendant DHS is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is the executive department responsible for enforcing federal immigration laws and is an agency of the United States. DHS has possession of and control over the documents and information requested by Plaintiffs under FOIA.

15. Defendant CBP is a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is the component agency of DHS that manages the United States' borders. CBP has possession of and control over the documents and information requested by Plaintiffs under FOIA.

16. Defendant USCIS is a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). USCIS is the component agency of DHS that oversees immigration to the United States. USCIS has possession of and control over the documents and information requested by Plaintiffs under FOIA.

**STATUTORY BACKGROUND**

17. The Freedom of Information Act provides that any member of the public may request records from a United States agency. Upon receipt of a FOIA request, an agency must determine within 20 business days—or, in "unusual circumstances," by 30 business days—whether it will comply with a request and notify the requestor of its determination and reasoning in writing. 5 U.S.C. § 552(a)(6)(A)(i)-(B)(i). This determination must also timely indicate the scope of the documents the office intends to produce and the exemptions, if any, that it will apply to withhold documents.

18. In response to a FOIA request, an agency must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions after engaging in a reasonable search for responsive records, including of any field offices that may possess relevant materials. 5 U.S.C. § 552 (a)(3)(A), (C), (b)(1)-(9).

19. Although a requester under FOIA must typically appeal agency action administratively before commencing litigation, if the agency has failed to abide by its obligations and issue a determination within the statutory timeframe, the administrative appeals process is considered exhausted. 5 U.S.C. § 552(a)(6)(C)(i). Upon complaint, a district court can enjoin an agency from withholding records and order production of records improperly withheld. 5 U.S.C. § 552(a)(4)(B).

**FACTUAL BACKGROUND**

20. On January 27, 2017, President Trump issued Executive Order 13,769, titled "Protecting the Nation from Foreign Terrorist Entry into the United States" (the "First Executive Order"). The First Executive Order banned the entry of individuals from seven predominantly Muslim countries—Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen—into the United States for ninety days. It also suspended the entire United States Refugee Admissions Program for 120

days, indefinitely barred the entry of Syrian refugees, and included an exception for non-Muslim refugees. Exec. Order No. 13,769 § 5(a)-(c), 82 Fed. Reg. 8977 (Jan. 27, 2017).

21. Following a series of successful legal challenges enjoining the First Executive Order, President Trump issued a new executive order on March 6, 2017, Executive Order No. 13,780, which took effect on March 16, 2017 ("Second Executive Order"). This Second Executive Order maintained the ban on six Muslim majority countries—Iran, Libya, Somalia, Sudan, Syria, and Yemen—for 90 days, removing Iraq from the list of targeted countries but subjecting Iraqis to specific enhanced-vetting requirements. Exec. Order No. 13,780 § 2(c), 82 Fed. Reg. 13,209 (Mar. 6, 2017). The Second Executive Order also provided for the grant of case-by-case waivers for individuals whose entry was otherwise suspended. *Id.*

22. After the Fourth and Ninth Circuits nationally enjoined the Second Executive Order, the Secretary of Homeland Security undertook a "worldwide review" to assess what "additional information would be needed from each foreign country to assess adequately whether their nationals seeking to enter the United States pose a security or safety threat." *See* Proclamation No. 9645 § 1(c), 82 Fed. Reg. 45161 (Sept. 24, 2017). This "worldwide review" ostensibly resulted in Presidential Proclamation 9645 on September 24, 2017, which is the subject of this Request. The Proclamation indefinitely bars nationals of eight countries from entry into the U.S.: Chad, Iran, Libya, North Korea, Syria, Venezuela, and Yemen. *See id.* § 1(g). There is near-perfect overlap between the Muslim-majority countries whose nationals are banned before and after the "worldwide review."

23. On June 26, 2018, the Supreme Court upheld the legality of the Proclamation, allowing the ban on nationals of five predominantly Muslim countries to remain in effect indefinitely.

24.     The Proclamation, like the Second Executive Order, allows for case-by-case waivers from the ban on entry to the United States, which can be granted by a consular officer, the Commissioner, CBP, or the Commissioner's designee in certain circumstances. *Id.* § 3(c). These circumstances include whether the denial of entry "would cause undue hardship," when "entry would not pose a threat to national security," and when entry "would be in the national interest." *See id.* The Proclamation further requires the Secretary of State and the Secretary of Homeland Security to coordinate to adopt guidance establishing when waivers may be appropriate for otherwise barred foreign nationals. *See id.* No such guidance has been publicly promulgated to date, and the agencies have not provided any meaningful information about the waiver application procedure, how waiver eligibility determinations are made, and whether any recourse exists for persons denied a waiver. However, publicly available statements by consular officers have confirmed that some guidance has been promulgated, at least in the form of guidance cables, sample questions and answers, and other instructions.[10] Such documents, essential to understanding the Proclamation "as it is written" and "as it is applied", are reportedly not classified. *Trump v. Hawaii*, 585 U.S. ____, ____ (2018) (Breyer, J. dissenting) (internal quotes omitted).

25.     Immediately after the Proclamation went into effect, Plaintiffs began receiving reports from banned individuals of *pro forma*, mass denials of both visas and waivers by consular offices in Armenia, Turkey, Djibouti, and elsewhere. Many of the individuals who were notified that they had been denied waivers had never even been provided an opportunity to seek a waiver. Automatically denied individuals include those who had previously been informed that their visas had been approved. Further, government statistics indicate that the number of waivers

---

[10] *See* Stahl, *supra* note 7.

granted is "a miniscule percentage" of those eligible for visas—during the Proclamation's first month, the State Department reported that of the 6,555 applicants it received, it approved only *two* for waivers. *Hawaii*, 585 U.S. at _____ (2018) (Breyer, J. dissenting) (internal quotes omitted).

26. This lack of clarity has augmented the chaos and hardship experienced by the affected individuals—many of whom are direct relatives of U.S. citizens or Lawful Permanent Residents.

27. In light of the Supreme Court's ruling upholding the Proclamation's indefinite ban, a waiver grant is the exclusive means by which banned nationals of the named countries may enter the United States, the records Plaintiffs request would provide information vitally important to the public and to Plaintiffs' ability to advise impacted individuals and families. Moreover, the records requested are critical to illuminating whether the government is applying the waiver system in a non-discriminatory fashion. *Hawaii*, 585 U.S. at ____ (2018) (Breyer, J. dissenting).

## PLAINTIFFS' FOIA REQUEST

28. Plaintiffs submitted the Request to Defendants on January 23, 2018.

29. The Request seeks records created on or after September 24, 2017, the date of the Proclamation, that concern guidance, interpretation, implementation, or enforcement of the Proclamation's waiver provision by DHS, CBP, the Department of State, or any other component agency of the federal government. *See* Ex. A, Muslim Advocates and CCR FOIA Request.

30. Broadly, the Request seeks policies, guidance, and procedures responsive to the relevant timeframe that illuminate how the individual waiver requests are accepted and assessed, including how the factors laid out in the Proclamation of "undue hardship", "threat to national

security", and entry "in the national interest" are evaluated. The Request also seeks quantitative data points such as the numbers of waiver requests received, granted, and denied under the Proclamation by the Department of State, CBP, DHS, or any DHS component agency.

31. Plaintiffs sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) due to the magnitude of public interest and the "compelling need" for greater transparency regarding government policies concerning implementation of the Proclamation.

32. Plaintiffs also sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), (iii) on the basis that "disclosure of the request materials is in the public interest because it is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest" of Plaintiffs, and in light of their roles as members of the news media.

## AGENCY RESPONSE AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

### Defendant DHS's Response

33. On February 2, 2018, DHS sent a letter via email acknowledging receipt of the Request in their office on January 23, 2018 and granting expedited processing and fee waiver. *See* Ex. B, Letter from LaEbony Livingston, FOIA Program Specialist to Sirine Shebaya, Senior Staff Attorney (Feb. 2, 2018). Under 6 C.F.R. Part 5 § 5.5c, DHS invoked a 10-day extension beyond the typical 20-day statutory limit to respond to Plaintiffs' Request. *See id.*

34. Therefore, DHS was required to respond to Plaintiffs' Request on or before March 6, 2018.

35. As of this filing, Plaintiffs have not received the required determination from DHS; nor have they received any responsive records or any other substantive reply to their

Request. In fact, Plaintiffs have received no further correspondence from DHS since the February 2, 2018 letter.

### Defendant USCIS's Response

36. On February 6, 2018, USCIS sent a letter via email acknowledging receipt of the Request and granting a fee waiver, denying expedited processing, and limiting the scope of responsive documents to those in USCIS' possession as of February 6, 2018. *See* Ex. C, Letter from Jill A. Eggleston, Director of FOIA Operations to Sirine Shebaya, Senior Staff Attorney (Feb. 6, 2018). Pursuant to 5 U.S.C. § 552(a)(6)(B), USCIS invoked a 10-day extension beyond the typical 20-day statutory limit to respond to Plaintiffs' Request. *See id.*

37. USCIS was therefore required to respond to Plaintiffs' Request on or before March 20, 2018.

38. As of this filing, Plaintiffs have not received the required determination from USCIS; nor have they received any responsive records or any other substantive reply to their Request. Plaintiffs have received no communication from USCIS since their initial February 6, 2018 letter.

### Defendant CBP's Response

39. On February 7, 2018, CBP sent an email acknowledging receipt of the Request in their office on January 31, 2018 and denying both a fee waiver and expedited processing. *See* Ex. D, Letter from U.S. Customs and Border Protection to Sirine Shebaya, Senior Staff Attorney (Feb. 7, 2018). Pursuant to 5 U.S.C. § 552(a)(6)(B), CBP referenced a 10-day extension beyond the typical 20-day statutory limit to respond to Plaintiffs' Request but did not invoke it. *See id.*

40. CBP's Letter stated, "Currently the average time to process a FOIA request related to 'travel/border incidents' is a minimum of 3-6 months." *See id.* However, the letter did

not advise whether this amount of time would be required to respond to the Request or explain why Plaintiffs' request for records relating to the Proclamation's waiver process would be subject to the processing period for requests related to "travel/border incidents."

41. Without the 10-day extension, CBP's response to Plaintiffs was due on or before February 28, 2018. At the latest, even with the 10-day extension which it did not invoke, CBP's response was due on or before March 14, 2018.

42. As of this filing, Plaintiffs have not received the required determination from CBP; nor have they received any responsive records or any other substantive reply to their Request. Plaintiffs have received no communication from CBP since their February 7, 2018 letter.

43. Moreover, while CBP's letter provided a tracking number to monitor the Request online as it was being processed by CBP, as of this filing, a search for the Request on the online FOIA portal returns no results. *See* Ex. E.

**Defendant Department of State's Response**

44. As of this filing, Plaintiffs have received no communication from the Department of State regarding receipt of the Request nor any communication regarding determination or processing nor any records responsive to Plaintiffs' Request.

**Exhaustion of Administrative Remedies**

45. Despite their clear obligations under FOIA, Defendants have not provided any substantive determination in response to the Request nor released any records responsive to the Request within the statutory timeframe.

13

46. Because Defendants have not complied with the statutory time limits set forth in the FOIA statute, Plaintiffs' administrative remedies are considered exhausted under 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSE OF ACTION
### Violation of the Freedom of Information Act
### 5 U.S.C. § 552(a)

47. Defendants have violated 5 U.S.C. § 552(a)(6)(A)-(B) and applicable regulations promulgated thereunder by failing to determine whether to comply with Plaintiffs' Request and communicate such determination to Plaintiffs within 30 days.

48. Defendants' failure to timely release agency records in response to Plaintiffs' request has violated 5 U.S.C. § 552(a)(3)(A).

49. Defendants have violated 5 U.S.C. § 552(a)(3)(C)-(D) by failing to make reasonable efforts to search for records responsive to Plaintiffs' Request.

50. 5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiffs because Defendants continue to flout FOIA and improperly withhold agency records. Because Defendants' refusal to respond to Plaintiffs' requests prevents Plaintiffs from properly advising impacted individuals and educating the public about the ramifications of the Proclamation's waivers process, Plaintiffs will continue to suffer irreparable injury from Defendants' withholding of government documents subject to Plaintiffs' Request in defiance of FOIA mandates.

51. 28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendants' improper withholding of agency records in violation of FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Muslim Advocates and the Center for Constitutional Rights respectfully pray that the Court:

A. Enter judgment that Defendants' failure to determine within the statutorily appointed 30 days whether to comply with the Request and timely notify Plaintiffs of such determination and its reasoning violates FOIA;

B. Enter judgment that Defendants' unlawful withholding of the records requested violates FOIA;

C. Enter an order requiring Defendants to immediately release any and all responsive and not otherwise exempt records to Plaintiffs;

D. Award Plaintiffs their reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. Award such other further relief as the Court may deem just and proper.

DATED: June 28, 2018

Respectfully submitted,

/s/Sirine Shebaya
Johnathan Smith (D.C. Bar No. 1029373)
Sirine Shebaya (D.C. Bar No. 1019748)
Nimra H. Azmi*°
MUSLIM ADVOCATES
P.O. Box 66408
Washington, D.C. 20035
(202) 897-2622
sirine@muslimadvocates.org
nimra@muslimadvocates.org

Baher Azmy*
Diala Shamas*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6426
dshamas@ccrjustice.org

*application for* pro hac vice *admission forthcoming*
°*admitted in New York only; supervised by members of the DC bar*